| | |
|---|---|
| Susan Call: | ... is Jay Dean, Case #18-35976. |
| Jay Dean: | Hi there. |
| Susan Call: | Hi. |
| Jay Dean: | How are you? |
| Susan Call: | Good. How are you? |
| Jay Dean: | Well. |
| Susan Call: | Will you remain standing and raise your right hand? Do you swear to tell the truth and nothing but the truth under the penalty of perjury? |
| Jay Dean: | I do. |
| Susan Call: | Very good. You may have a seat. I have a drivers license and a Social Security card. While I review this, will you state your name for the record? |
| Jay Dean: | Jay Dean. |
| Susan Call: | And, Mr. Dean, is the address that you're currently living at the same as when you filed? |
| Jay Dean: | Yes. |
| Jacq. Critzer: | Jacqueline Critzer for Mr. Dean. |
| Susan Call: | Mr. Dean, have you filed all the taxes that you've been required to file in the past four years? |
| Jay Dean: | Yes. |
| Susan Call: | The 2017 taxes your attorney sent to me, are they a true and accurate version of what you filed with the state and/or the IRS? Do you owe spousal support or child support obligations? |
| Jay Dean: | No. |
| Susan Call: | Are you sure you don't? |
| Jay Dean: | Well, yes. I have spousal support ongoing. [crosstalk 00:00:58] |
| Susan Call: | Okay, so this is on your paperwork. |
| Jay Dean: | That's right. |

Dean 18-35976 (Completed 01/11/19)
Transcript by Rev.com



| | |
|---|---|
| Susan Call: | So, okay. So we have spousal support, and we have the information. Thank you very much. That helps us out. Have you ever filed for bankruptcy before? |
| Jay Dean: | Yes. |
| Susan Call: | Do you remember about when or how long ago? |
| Jay Dean: | Around April 2014. |
| Susan Call: | Okay. Have you made your first payment to the Chapter 13 trustee in this case? |
| Jay Dean: | Yes. |
| Susan Call: | Do you want your future payments coming through the TFS company or through your wages? |
| Jay Dean: | It's already set up with TFS. |
| Susan Call: | Okay, so I will give you that little form. Thank you for that, and that's all circled. Did you leave any real estate or any inherited property off of your paperwork as filed? |
| Jay Dean: | No. |
| Susan Call: | Has anybody passed away recently that you might receive property or money from? |
| Jay Dean: | No, ma'am. |
| Susan Call: | Is your income the same as when you filed? |
| Jay Dean: | Yes. |
| Susan Call: | Have you transferred any real estate out of your name in the past five years? |
| Jay Dean: | Yes. |
| Susan Call: | Okay, so what real estate did you transfer out in the past five years? |
| Jay Dean: | It was a marital home sold after divorce. |
| Susan Call: | Okay. Do you remember when you did that? |
| Jay Dean: | Mid-2014, I believe. |
| Susan Call: | 2014? Okay, and did you get any proceeds out of it? |

| | |
|---|---|
| Jay Dean: | No. |
| Susan Call: | Okay. |
| Jacq. Critzer: | There were proceeds to go to each of them, but there was an outstanding domestic support obligation that had arrears on it, and so none of it actually came to Mr. Dean. It all went to Miss Dean to cure the support arrears. |
| Susan Call: | How much was your portion that went to her? |
| Jay Dean: | I want to say 52? |
| Jacq. Critzer: | Between 50 and 53,000. |
| Susan Call: | Okay. Was that a spousal support obligation? |
| Jay Dean: | Yes, it was. |
| Susan Call: | Can we get the HUD-1 on that transfer? |
| Jacq. Critzer: | Probably. The form was four years ago? I would think so. |
| Susan Call: | Okay, so we'll skip the HUD-1 on that and we'll take a look at all that. Did you review your statements and schedules before they were signed and filed? |
| Jay Dean: | Yes. |
| Susan Call: | Are they accurate? |
| Jay Dean: | Yes. |
| Susan Call: | Did you list all of your assets and all of your debts? |
| Jay Dean: | Yes. |
| Susan Call: | Do you need to make any changes to any of your paperwork that you're aware of? |
| Jay Dean: | No, ma'am. |
| Susan Call: | Okay, so we have the value on the real estate. This is just a little [inaudible 00:03:16]. It's listed at 63,000 as the total current value. The total current value of the real estate's 318,000? |
| Jacq. Critzer: | Right. |

| | |
|---|---|
| Susan Call: | He has a place for the total value in with his share, so I think you might need to refigure that. |
| Jacq. Critzer: | Sure. |
| Susan Call: | Yeah, and you also have some information on there that it's T by E, but it can't be T by E. |
| Jacq. Critzer: | It's not, right. |
| Susan Call: | But you did not take the exemption. How much is your spousal support that you pay? |
| Jay Dean: | 3,300 a month. |
| Susan Call: | And that's it? You don't pay anything else to your spouse other than that? |
| Jacq. Critzer: | As of today, that's correct. |
| Susan Call: | As of today that's [crosstalk 00:03:54]. |
| Jacq. Critzer: | Prior to the date of filing, he was under an order to pay the 3,300 plus ... |
| Jay Dean: | 2,500. |
| Jacq. Critzer: | Which was equitable distribution, plus the spousal support arrearage of nine- |
| Jay Dean: | 936. |
| Jacq. Critzer: | And then there were- |
| Susan Call: | So, what was just spousal support? |
| Jacq. Critzer: | 3,300. |
| Jay Dean: | 3,300. |
| Susan Call: | And that was prior to filing? |
| Jay Dean: | Yes. |
| Susan Call: | And there was some arrearage spousal support prior to filing as well. What was that? |
| Jay Dean: | 936 a month. |

| | |
|---|---|
| Susan Call: | 936, okay. |
| Jay Dean: | A month. |
| Susan Call: | A month. I think that that line on 22C has to be adjusted. You have 6,750 on there. |
| Jacq. Critzer: | That's correct, and that's because it's a six-month looking back period. Those are court-ordered obligations. |
| Susan Call: | I get that. That part of the form's not looking back. The only part of the form is Part 1 that looks back, and any changes under the In re Lanning case must be made on Line 46, so that would be reflected on Line 46. |
| Jacq. Critzer: | Okay. |
| Susan Call: | Maybe you wouldn't change it on the spousal support line, but you would have to change it on Line 46 and put that amount back in. |
| Jacq. Critzer: | Understood. |
| Susan Call: | And then, you have a contribution from your son. Does he make part of your house payment? |
| Jay Dean: | He contributes to the household bills and expenses as needed. |
| Susan Call: | How much does he pay? Because we have some figures on there. |
| Jay Dean: | [crosstalk 00:05:20] |
| Susan Call: | About 1,200? Something like that? |
| Jay Dean: | It varies. |
| Jacq. Critzer: | That sounds about right. |
| Jay Dean: | Like, 1,195. |
| Susan Call: | 1,195? Okay. |
| Jay Dean: | [crosstalk 00:05:27] |
| Susan Call: | I didn't see that- |
| Jacq. Critzer: | On the 21? |
| Susan Call: | ... on his 22C either. |

| | |
|---|---|
| Jacq. Critzer: | Okay. |
| Susan Call: | And the other thing I see is the priority claim has come in, and amortized over 60 months it's 1,559, and on Line 35 you take $2,124, and that's based on the claim. I didn't see- |
| Jacq. Critzer: | Which claim? |
| Susan Call: | The IRS priority. |
| Jacq. Critzer: | The 93,000? |
| Susan Call: | Yes, but it may have come in a little bit lower, so take a look at that. Or a little bit higher. |
| Jacq. Critzer: | We expected it to be wholly unsecured, actually, and so when I filed the plan, I did it the way that the claim was filed even though we think it's incorrect. So, I think that will change, and if it does, then the percentage on secureds goes to 23 or 24%, so that may shift. |
| Susan Call: | Well, it's probably going to even higher than that with this change on the spousal support too, but again ... Right now though, based on the claim, I ran it based on the claim, it was 1,559 amortized over 60 months, as opposed to the 2,124. |
| Jacq. Critzer: | Okay. |
| Susan Call: | Let's see. Just those things alone would give us a 2,125 DMI. But again, they're not ... We'll take a better look at that as well, and take a look at that claim if it does adjust down. It looked like it was finalized to me, though, when I looked at it. We usually put it on reserve if the IRS hasn't finalized it. |
| Jacq. Critzer: | They did. I just disagree with them, because it's from 2012 and 2013. |
| Susan Call: | Okay. |
| Jacq. Critzer: | So, I ... More than three year ... I'm ... |
| Susan Call: | Did you file those taxes on time during those years? |
| Jacq. Critzer: | Oh, yes. |
| Susan Call: | Okay. So, maybe that'll be an issue for the IRS- |
| Jacq. Critzer: | Right. |

| | |
|---|---|
| Susan Call: | ... and they can take a look at it. And I'm not sure that the business value is a tool of the trade. That's a piddly little thing, again, given the money that's going to be required to be paid back in, but it is something, and then it's offset by the IRS debt anyway. |
| Susan Call: | So, what I ... Well, let's get back to that. You have some expenses on your profit and expense statement. You have managers and you're paying them $34,000, and that was from May to October, I think. Do you have managers who work there? You're not a manager, are you? Do you have other people who work for you? |
| Jay Dean: | Yes. |
| Susan Call: | That's what the manager amount is? |
| Jay Dean: | Yes. |
| Susan Call: | Okay. Let's see. So, the manager's health insurance and the manager's salaries, this is not for you? |
| Jacq. Critzer: | Correct. |
| Jay Dean: | Correct. |
| Susan Call: | Correct? Is the shareholder insurance and the shareholder health insurance, is that yours? Does that come to you? |
| Jay Dean: | Yes. |
| Susan Call: | Are you the only shareholder? |
| Jay Dean: | Yes. |
| Susan Call: | Okay. So, we only have that on one of the forms. It didn't come out on the other. The numbers looked okay on that when I ran them based on the five months that you have in the form. Does your business pay your health insurance for you? |
| Jay Dean: | Yes. |
| Susan Call: | Okay. |
| Jacq. Critzer: | The business pays the health insurance, but it is charged to Mr. Dean. |
| Jay Dean: | As startup distributions. |
| Susan Call: | [crosstalk 00:08:49] |

| | |
|---|---|
| Jacq. Critzer: | I will get in touch with his CPA, and we can have him, of course, provide information on that, but I wanted to make sure, of course, that if we listed it as an expense for Mr. Dean that he was actually paying for it. It's listed the way it is because his CPA said that that's how it's done. I'll make sure we have the documentation for that as well. |
| Susan Call: | Okay, because otherwise that 796 is income and then it needs to come back in. |
| Jacq. Critzer: | Right, exactly. |
| Jay Dean: | It's a company policy, so it's [inaudible 00:09:14] with the managers. |
| Susan Call: | Okay. So, you're not considered a manager. So, you have some debt. You have the lease debt on Schedule F and you've marked it as contingent. I think it's a lease debt. Can you tell me what that is? |
| Jay Dean: | What's that? |
| Jacq. Critzer: | That's DDR. |
| Susan Call: | DDR? |
| Jacq. Critzer: | He's personally guaranteed the lease space for the Brandermill location for Virginia Pizza Partners. |
| Susan Call: | Is that location still operating? |
| Jay Dean: | Yes. |
| Susan Call: | Okay. Are you in breach of that lease? |
| Jacq. Critzer: | No. |
| Jay Dean: | No. |
| Susan Call: | Do you anticipate breaching that lease? I'm confused as to why you listed it possibly if there's no amount outstanding on it. |
| Jacq. Critzer: | Because it's a personal guarantee, so if the business doesn't pay it, he is required to pay for it. So it's unliquidated and contingent. It can easily be removed. It's not a debt that he owes as of today, but it is unliquidated and contingent. |
| Susan Call: | Okay. I just was making sure it was not the one in Danville that closed down. Okay. So, what I want, pay off on the real estate. This is in addition to the HUD-1. Payoff on the real estate. The lease for the business that DNR, or [crosstalk 00:10:32] |

| | |
|---|---|
| Jacq. Critzer: | DPR? |
| Susan Call: | Mm-hmm (affirmative), showing me the guarantee information. The pay history on the lease, and I have proof of support but based on his testimony it is what it probably is is the amount now. State tax returns. Six months of all business and personal bank statements prior to filing. The business general ledger and financial statements, and proof of all of his distributions for the year. And then we had the HUD-1 but I gave you that first. |
| Susan Call: | We do have a creditor present. Will you please state your name? |
| James Wilson: | Thank you. I'm Jim Wilson, representing Cassandra Dean. May I question- |
| Susan Call: | Yes. Oh, I'm sorry. Yes, you may question. You have questions? |
| James Wilson: | Yes, I do. Mr. Dean, I sent you a request for your tax return on December 19th. Did you provide me with a copy of your tax return? |
| Jacq. Critzer: | I have a copy today. |
| James Wilson: | So, the answer is you did not provide it to me until today. |
| Jacq. Critzer: | Not prior to today. |
| James Wilson: | Is that correct? |
| Jay Dean: | Yes. |
| James Wilson: | I want to ask you about the real estate that you own. You own this property at 2400 Cascade Meadows with your son, Christian Dean. Is that correct? |
| Jay Dean: | Yes. |
| James Wilson: | And you got permission in your Chapter 11 case by court order to purchase that property and you put approximately $32,600 down on it. Isn't that correct? |
| Jay Dean: | I got permission, but I believe I only put, well, was that 20% down? I want to say 20,000, but I don't recall for sure. It was a minimal amount to buy us a home for me and my sons. |
| James Wilson: | And you say sons, you purchased that house with your son Christian Dean, correct? |
| Jay Dean: | Yes. |
| James Wilson: | You took title as joint tenants with common law right of survivorship, correct? |

| | |
|---|---|
| Jay Dean: | Yes. |
| James Wilson: | What was his monetary contribution toward the purchase of that property? |
| Jay Dean: | Nothing. |
| James Wilson: | He didn't pay anything down? And the mortgage or rent you list on your Schedule J for 1,722.37 a month, who is that payable to? |
| Jay Dean: | That's payable to the mortgage company, Security Pacific Partnership. |
| James Wilson: | Do you pay that directly to the mortgage company? |
| Jay Dean: | Yes. |
| James Wilson: | And subsequent to your purchase of that property, did you enter into an agreement with your son? I'm going to show you a copy of that agreement. |
| Jacq. Critzer: | Thank you. |
| James Wilson: | And I'm going to direct your attention to page three. Is that your son's signature on the agreement? |
| Jay Dean: | Yes. |
| James Wilson: | And directing your attention to page four, is that your signature on the agreement? |
| Jay Dean: | Yes. |
| James Wilson: | And by the terms of this agreement, if the property is sold or refinanced, you get all the money, all the net proceeds after the mortgage is paid off, isn't that correct? |
| Jay Dean: | Right. |
| James Wilson: | So, your son put no money down, and you actually own the entire property, don't you? |
| Jay Dean: | Yes. I make the payments. |
| James Wilson: | Under what circumstances would your son be entitled to some equity in that property? |
| Jay Dean: | I don't believe there are any. |
| James Wilson: | Okay, so in fact- |

| | |
|---|---|
| Jay Dean: | Unless, I guess my death, maybe. |
| James Wilson: | You own the entire property, correct then? |
| Jay Dean: | Yes, I do. I had to have my son's credit after the divorce and things- |
| James Wilson: | So, he was there to qualify for the mortgage. |
| Jay Dean: | To finance the house, the home. I need the home for my business office, filing, repair and maintenance inside a storage warehousing from an apartment. |
| James Wilson: | I'm going to ask you about this debt to DDR, Mr. Dean. How did you come up with the amount for that debt, 525,960? |
| Jay Dean: | That's the remainder of the lease? |
| Jacq. Critzer: | Right. |
| Jay Dean: | Contingent four-year's lease. |
| James Wilson: | Is that the sum total of- |
| Jay Dean: | It's a personal guarantee by Cassandra and myself. |
| James Wilson: | Is that the sum total of all the rent due under the lease? |
| Jay Dean: | Yes. |
| James Wilson: | How is that unliquidated? |
| Jay Dean: | I don't know. If I fold the company, I'm liable for it. |
| James Wilson: | Correct, and you've come up with an amount for that debt. Right? |
| Jacq. Critzer: | He's only liable if the company doesn't pay it, so as of today- |
| James Wilson: | Well, that may or may not be whether it's contingent. I'm asking him why it's unliquidated. Why is the debt unliquidated? |
| Jay Dean: | I don't know how to answer that question. |
| Jacq. Critzer: | Okay. |
| Jay Dean: | [crosstalk 00:15:40] |

| | |
|---|---|
| James Wilson: | Because it's not unliquidated. It's liquidated, isn't it? You came up with a specific amount. Correct? |
| Jay Dean: | By default. I- |
| Susan Call: | So, you know what that term means, unliquidated? |
| Jay Dean: | Right. |
| Susan Call: | Okay. Yes you do? Okay. |
| Jay Dean: | Yes. I mean, the operating business going forward, the rents are being paid. This landlord will come after me for every bit of that if I default in any manner, shape, or fashion. |
| James Wilson: | Well, that's contingent, isn't it? |
| Jay Dean: | Yes. |
| James Wilson: | It's a condition? You're saying that the debt is- |
| Jay Dean: | Personal- |
| James Wilson: | … conditioned upon a default by the company. |
| Jay Dean: | Personal guarantee, absolute. |
| James Wilson: | But, you know how much it is. You've stated a specific amount on your schedule. |
| Jay Dean: | Yes. |
| Jacq. Critzer: | Based on the monthly rent. That's not based on what he would incur for default or any other terms of the lease. That would just strictly be based on the monthly terms. That wouldn't necessarily be what the grand total would be at the time of default if there was a default. |
| Jay Dean: | True. |
| James Wilson: | How far are you into this lease, and how much for the term is left on this lease? |
| Jay Dean: | I am one year into a [inaudible 00:16:39] most recent five-year term. |
| James Wilson: | So you have four years left on it? |
| Jay Dean: | Yes, sir. |

| | |
|---|---|
| James Wilson: | Did you enter into it in November or December? |
| Jay Dean: | October. |
| Jacq. Critzer: | November. |
| Jay Dean: | November 1st was, I believe. |
| James Wilson: | October of 2017 then? |
| Jay Dean: | Yes. |
| James Wilson: | Why did you file bankruptcy when you did on November 28th? Without looking at your attorney, can you answer that? |
| Jay Dean: | [inaudible 00:17:08]. How did I file? |
| Jacq. Critzer: | I think he can look at his attorney if he needs to. |
| James Wilson: | Well, how about Mr. Dean answers the question? |
| Jay Dean: | I am visiting with the clients the course of this year, and pushed this to the point of being critical. I'm not looking well for the future. I have IRS debt. I have done my best in the course of the last year to pay off Virginia. From the divorce, I wound up in a suit with that very landlord. I wound up very much in arrears, which I have worked myself out of to the tunes of hundreds of thousands of dollars. I paid off Virginia. I tried OIC with the IRS, the course of the whole year. It took me 13 months, $40,000. The future of these two companies is to provide your client support is at jeopardy, and now- |
| James Wilson: | Sir? Let me step back a second. You said sued by that landlord. Which landlord are you referring to with that statement? |
| Jay Dean: | DDR. |
| James Wilson: | Okay, they sued you? |
| Jay Dean: | Yes. |
| James Wilson: | Okay. And how much did they- |
| Jay Dean: | Actually, I sued them and lost. But that was back during the divorce. This was in 2012. That's why I have taxes in 2012 and 2013 I'm trying to pay. |
| James Wilson: | Well, let me stop you, Mr. Dean. I asked you why you filed bankruptcy on November 28th. Did a suit by your landlord have anything to do with that? |

| | |
|---|---|
| Jay Dean: | No, no. I'm clear of this. |
| James Wilson: | Was there any imminent creditor action against you on November 28th? |
| Jay Dean: | It's the IRS. I'm trying to repay them. |
| James Wilson: | What were they doing. Were they suing you? |
| Jay Dean: | IRS turned down my OIC after I got an approval from Virginia. I have to pay them or they are going to liquidate everything. |
| James Wilson: | You owe back spousal support right now, don't you? |
| Jay Dean: | I'm paying it. I do have an amount that is in arrears. |
| James Wilson: | How much do you owe total in arrears right now? |
| Jay Dean: | I don't have that computation on me, but I would think it's around in the 20s somewhere. I have been paying it down as best I can, but I have not been able to pay the IRS during the course of this. |
| James Wilson: | I have no other questions for him. |
| Jay Dean: | 33,896. |
| Susan Call: | You have no other questions? |
| James Wilson: | No. |
| Susan Call: | Are there any other creditors? That is all I have. You are excused. Thank you so much, and get that documentation over to me. |
| Jay Dean: | Okay. Thank you. |